# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-3566

———————————————

United States of America

*Plaintiff - Appellee*

v.

Jeremy Daniel Conerd

*Defendant - Appellant*

——————

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

——————

Submitted: May 18, 2016
Filed: July 18, 2016

——————

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.

——————

WOLLMAN, Circuit Judge.

Jeremy Daniel Conerd was charged in a one-count indictment with being a felon and unlawful drug user in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) and (g)(3). He filed a motion to suppress the ammunition recovered from his residence, arguing that it was discovered as a result of a police officer's warrantless entry onto the curtilage of his home in violation of the Fourth

Amendment. After a hearing, the district court[1] denied the motion, concluding that the officer's entry onto the curtilage of Conerd's residence was permissible under the emergency-aid exception to the warrant requirement.[2] Conerd pleaded guilty to the charged offense and reserved his right to appeal the denial of the motion to suppress. We affirm.

On November 27, 2013, at about 11:25 p.m., Jessica Pirtle called the Oelwein, Iowa, police department and spoke with a dispatcher. Pirtle reported that she had just received a call from Conerd's sister, who, in turn, had just received a call from Conerd, informing his sister that he had just finished assaulting Travis Norton and was in the process of assaulting Megan Owens in the basement of his home in Olewein. Conerd also reportedly told his sister that once he finished assaulting Owens, he intended to drive to his sister's home in Lamont, Iowa, and shoot her. In response to this call, Officer Ted Phillips was dispatched to Conerd's residence to conduct a welfare check.

Officer Phillips testified at the suppression hearing that he was familiar with Conerd, Norton, and Owens, as well as with Conerd's residence in Oelwein. Phillips stated that he had arrested Norton in the past for drug-related offenses and that Owens, who was once romantically involved with Conerd, had reported multiple domestic-assault incidents over the prior year involving Conerd and occurring at his residence. Phillips testified that he had previously received information from multiple informants and from another officer that Conerd might be in possession of a firearm. Phillips also

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, adopting the report and recommendation of the Honorable Jon Stuart Scoles, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

[2]The government does not challenge the district court's curtilage determination.

believed that Conerd had a closed-circuit-camera system installed at his residence and that one of the cameras was aimed at the front door.

Officer Phillips arrived at Conerd's residence at about 11:30 p.m. and parked just down the street from the house. Phillips testified that he could see from his vehicle that the only light in Conerd's house was coming from the basement window—where Conerd was reportedly assaulting Owens. As Phillips approached the residence, he did not see or hear anything to indicate that there was an assault taking place inside the residence. Nevertheless, Phillips remained concerned about Norton's and Owens's safety. Phillips testified that he was also concerned about his own safety, particularly in light of Conerd's history of domestic assaults, as well as reports that Conerd had a firearm in his possession and had a closed-circuit camera trained on his front door. Accordingly, instead of knocking on Conerd's front door, Phillips walked up the driveway of the house next door, stepped onto Conerd's side yard, and approached the basement window of Conerd's house from which the light was shining "so [he] would know what [he] was walking into." From a distance of five or six feet, Phillips was able to see through the basement window. He observed Conerd and Norton standing together in the basement and Norton raising a glass pipe to his mouth to ingest what Phillips believed was illegal drugs. He did not see Owens. Officer Phillips then returned to his vehicle, called off the second police unit that was en route to the scene, and drove back to the police department, where he obtained a warrant to search Conerd's residence. Officers recovered a box of assorted ammunition during the search, which eventually led to Conerd's indictment and conviction.

In his motion to suppress, Conerd argued that because there was insufficient information for a reasonable officer to believe that an emergency was occurring in his residence, Officer Phillips's warrantless entry onto the curtilage of his residence to peer into the basement window was not justified under the emergency-aid exception to the warrant requirement. The district court rejected Conerd's argument, concluding

instead that, considering the totality of the circumstances, Officer Phillips's actions were "supported by an objectively reasonable, articulable suspicion that an occupant of [Conerd's] basement was threatened with imminent, serious injury" and by a "legitimate concern for his own safety," and that the emergency-aid exception thus applied.

We review the district court's factual findings for clear error and its denial of the motion to suppress *de novo*. United States v. Smith, 820 F.3d 356, 359 (8th Cir. 2016). Although "warrantless searches and seizures inside a home are presumptively unreasonable" under the Fourth Amendment, "the warrant requirement is subject to certain exceptions." Id. at 360. One such exception, "whether denoted as an exception . . . for 'community caretaking' or 'emergency aid,'" permits a "police officer [to] enter a residence without a warrant . . . where the officer has a reasonable belief that an emergency exists requiring his or her attention." Ellison v. Lesher, 796 F.3d 910, 915 (8th Cir. 2015) (discussing the exception in the context of qualified immunity) (citations omitted), cert. denied, 136 S. Ct. 915 (2016); see Burke v. Sullivan, 677 F.3d 367, 371 (8th Cir. 2012) ("[O]fficers may enter a residence without a warrant when they have 'an objectively reasonable basis for believing that an occupant is . . . imminently threatened with [serious injury].'" (quoting Ryburn v. Huff, 132 S. Ct. 987, 990 (2012))); see also United States v. Spotted Elk, 548 F.3d 641, 651 (8th Cir. 2008). Such a warrantless entry "is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.' The officer's subjective motivation is irrelevant." Brigham City v. Stuart, 547 U.S. 398, 404 (2006) (citations omitted).

Viewed objectively, the circumstances of this case provided a reasonable basis for Officer Phillips's warrantless entry onto the curtilage of Conerd's residence. Phillips was told that Conerd had assaulted Norton and was in the process of assaulting Owens in the basement of his residence. Phillips was aware that Owens

had reported multiple domestic assaults by Conerd at his residence over the year preceding this incident, and Phillips himself had responded to at least one of these domestic-assault reports. When Phillips arrived at Conerd's residence, the only light in the house was coming from the basement—precisely where the assault of Owens was reportedly ongoing. Phillips was also aware that Conerd might be in possession of a firearm and likely had a closed-circuit camera trained on the front door of his residence. We agree with the district court that because these circumstances gave Phillips an objectively reasonable basis for entering onto the curtilage of Conerd's residence and looking through the basement window, the warrantless search was authorized under the emergency-aid exception to the warrant requirement. See Burke, 677 F.3d at 371. Whether Phillips was motivated primarily by concerns for his own safety or by concerns for the safety of Norton and Owens is irrelevant, because Phillips's actions were reasonable under the Fourth Amendment, given that "the circumstances, viewed *objectively*, justif[ied] the action[s]." Brigham City, 547 U.S. at 404.

The judgment is affirmed.

_____