# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3254

_____

|  |  |  |
|---|---|---|
| United States of America, | * * * | |
| Appellee, | * * | Appeal from the United States District Court for the |
| v. | * * | Western District of Missouri. |
| Christopher Quezada, | * * * | |
| Appellant. | * | |

_____

Submitted: February 15, 2006
Filed: April 10, 2006

_____

Before WOLLMAN, FAGG, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After being found with a shotgun, Christopher Quezada was charged with being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1). He moved to suppress the admission of the shotgun into evidence, arguing that the deputy sheriff who discovered the gun had no lawful basis for entering the apartment in which he found it. The district court[1] denied the motion, concluding that the entry was permissible

_____

[1] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

under the deputy's community caretaker function. Mr. Quezada appeals the denial of the suppression motion. We affirm.

## I.

The Clay County, Missouri, Sheriff's Department often serves papers in civil proceedings. In this case, Deputy Danny Ruth went to Tiffany Giannone's apartment to serve her with a child protection order. The deputy had been to Ms. Giannone's apartment in the past and believed that she lived alone.

Deputy Ruth knocked on the apartment door. Although the door had been closed, the latch was not engaged; the door therefore yielded to the deputy's knock. Through the gap in the door, the deputy could see that the lights were on in the apartment and he heard a television playing. He shouted, "Deputy Sheriff, Sheriff's Department!," into the apartment several times, but received no response. Deputy Ruth then called his dispatcher and told him of the open door; the dispatcher in turn "held the air" (stopped all other radio traffic) so that fellow police officers could hear if the deputy needed assistance. With the radio silenced and his weapon drawn, Deputy Ruth opened the door further and went inside.

Soon after entering the apartment, Deputy Ruth looked down a hallway. There he saw a pair of legs on the ground sticking out from a bedroom. As he got closer, the deputy discovered that the legs belonged to a man lying on the ground with a shotgun protruding from beneath him. Deputy Ruth yelled but received no reply. He kicked the man's feet to no avail. Only when the deputy took the shotgun from underneath the man did he begin to stir.

After being handcuffed and moved to the living room, the man said that his name was Carlos Pacheco and that he was staying in the apartment at Ms. Giannone's invitation. Further investigation revealed, however, that the man's true name was Christopher Quezada and that he had previously been convicted of felony theft.

A grand jury indicted Mr. Quezada for being a felon in possession of a firearm in violation of § 922(g)(1). After the district court denied his motion to suppress, Mr. Quezada entered a conditional guilty plea, reserving the right to appeal the district court's ruling. *See* Fed. R. Crim. P. 11(a)(2).

## II.

Mr. Quezada maintains that Deputy Ruth's entry into the apartment was unreasonable. Government officials may not conduct unreasonable searches or seizures without running afoul of the fourth amendment. Generally speaking, evidence gained from a fourth-amendment violation may not be used against a defendant at trial. *See Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961); *Weeks v. United States*, 232 U.S. 383, 391-93, 398 (1914). We review the district court's denial of the motion to suppress *de novo*. *United States v. Williams*, 429 F.3d 767, 771 (8th Cir. 2005).

We note at the outset that there is a difference between the standards that apply when an officer makes a warrantless entry when acting as a so-called community caretaker and when he or she makes a warrantless entry to investigate a crime. Police officers, unlike other public employees, tend to be "jacks of all trades," who often act in ways totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of criminal law. *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). These activities, which are undertaken to help those in danger and to protect property, are part of the officer's "community caretaking functions." *Id.* They are unrelated to the officer's duty to investigate and uncover criminal activity. A police officer may enter a residence without a warrant as a community caretaker where the officer has a reasonable belief that an emergency exists requiring his or her attention. *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978); *United States v. Nord*, 586 F.2d 1288, 1291 n.5 (8th Cir. 1978).

When acting to investigate and uncover crime, on the other hand, a police officer acts at the core of his or her duties; it is to these types of actions that the warrant clause of the fourth amendment is directed. *See Johnson v. United States*, 333 U.S. 10, 14 (1948). A warrantless entry in such circumstances must be justified by probable cause to believe that a crime has been or is being committed and the existence of what are called exigent circumstances. Examples of such circumstances are when an officer is in hot pursuit of a fleeing felon, and when an officer reasonably fears the imminent destruction of evidence or reasonably perceives a risk of danger to the police or others. *Minnesota v. Olson*, 495 U.S 91, 100 (1990).

The Supreme Court has held that reasonable belief, the standard used when determining whether an officer may enter as a community caretaker, *see Mincey*, 437 U.S. at 392-93, is a less exacting standard than probable cause. *Maryland v. Buie*, 494 U.S. 325, 336-37 (1990). This has led to some concern that a police officer might use his or her caretaking responsibilities as a pretext for entering a residence. The Ninth Circuit, therefore, has held that to justify an entry like the one in the present case an officer must have actually believed that an emergency existed and the belief must have primarily motivated his or her actions. *See United States v. Cervantes*, 219 F.3d 882, 890 (9th Cir. 2000), *cert. denied*, 532 U.S. 912 (2001). This is contrary to the principle applicable when an entry is justified by probable cause to believe that a violation of law has occurred or is occurring; in those situations, the subjective intent of the officer is immaterial, *see Whren v. United States*, 517 U.S. 806, 813 (1996).

But we do not have to decide the legal relevance, if any, that the subjective intent of the officer in the present case might have because the district court found on an ample record that Deputy Ruth entered the apartment to investigate a possible emergency situation. In fact, Mr. Quezada does not even assert that Deputy Ruth did not believe that an emergency existed or that he used this belief as a pretext to search for criminal wrongdoing. Deputy Ruth's entry into the apartment therefore violated

the fourth amendment only if no reasonable officer could have believed that an emergency was at hand.

We agree with the district court that Deputy Ruth's belief was reasonable. Had the apartment been dark and quiet, it might have been reasonable to assume that Ms. Giannone had simply not closed the door securely on her way out. But when the door opened, Deputy Ruth saw that the lights were on and heard a television playing, making it more likely that someone was at home. When Deputy Ruth yelled into the apartment several times but received no answer, a reasonable officer in the deputy's position could conclude that someone was inside but was unable to respond for some reason. Because Deputy Ruth had a lawful basis for entering Ms. Giannone's apartment, the shotgun that he saw protruding from beneath Mr. Quezada is admissible under the plain-view doctrine. *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) (plurality opinion).

### III.

For the foregoing reasons, we affirm the district court's denial of Mr. Quezada's motion to suppress.

_____