# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3192

———————

United States of America,           *
                                    *
              Plaintiff-Appellee,   *
                                    *   Appeal from the United States
      v.                            *   District Court for the
                                    *   District of Nebraska.
Gonzalo Uscanga-Ramirez,            *
                                    *
              Defendant-Appellant.  *

———————

Submitted: January 9, 2007
Filed: January 31, 2007 (Corrected 2/8/07)

———————

Before MURPHY and SMITH, Circuit Judges, and READE,[1] District Judge.

———————

READE, District Judge.

Gonzalo Uscanga-Ramirez pled guilty to one count of being an illegal alien in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(5)(A). Uscanga-Ramirez conditioned his guilty plea on the right to challenge the district court's[2] partial denial of his motion to suppress. Finding no error, we affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

[2]The Honorable Joseph F. Bataillon, Judge, United States District Court for the District of Nebraska, adopting report and recommendations of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

# I.

On November 15, 2005, around 1:00 p.m., Ina Olson called the Lincoln Police Department and reported that her son-in-law, Uscanga-Ramirez, was holding her daughter, Lisa Olson, against her will in a house at 1919 Griffith Street. Ina Olson said that she would wait in a parked car in front of the house. The Department dispatched Officer John Brandl and Officer Kevin Hinton to the house.

When the officers arrived, they saw Ina Olson sitting in a parked car in front of the house. They also saw Lisa Olson walking out the front door and down the sidewalk towards them. Lisa Olson told the officers that Uscanga-Ramirez had not held her against her will. Lisa Olson stated that she was leaving with her mother.

As Lisa Olson got into the car, Officer Brandl asked her where her husband was, if he was "okay," and whether there would be a problem when she came back to the house. Lisa Olson said that Uscanga-Ramirez had locked himself in a bedroom with a gun and was very upset, because she had told him that she was going to leave him. Lisa Olson denied that Uscanga-Ramirez had threatened to harm anyone, including himself.

Officer Brandl asked Lisa Olson if he could go into the house and check on her husband. Lisa Olson agreed and gave the officers directions on how to find the bedroom. Officer Brandl asked Lisa Olson and her mother to stay in the area until they finished checking on Uscanga-Ramirez.

The officers went into the house through the front door. They walked across the living room towards the bedroom. An Hispanic man walked into the living room from an adjoining kitchen. Officer Hinton ordered the man to identify himself, and the officers determined that the man was not Uscanga-Ramirez. The man directed the officers to a bedroom, which was across the living room. The man's directions were consistent with Lisa Olson's directions. The bedroom door was closed.

The officers tried to open the door, but it was locked. They knocked on the door, identified themselves as police officers and announced that they needed to talk to Uscanga-Ramirez immediately to make sure he was safe. Uscanga-Ramirez unlocked and opened the door.

The officers told Uscanga-Ramirez what Lisa Olson had told them. During the conversation, Officer Brandl stood at the foot of a bed, Uscanga-Ramirez sat at the foot of the bed and Officer Hinton stood near the center of the bed between Uscanga-Ramirez and the doorway.

Officer Brandl asked Uscanga-Ramirez where the gun was located. Uscanga-Ramirez said he did not have a gun. He told the officers that there was no gun and Lisa Olson was lying. Officer Hinton noticed that the bed was unmade and that a pillow was lying in the middle of the bed, rather than at the head of the bed. Officer Hinton lifted the pillow and found a loaded .22 caliber revolver.

The officers handcuffed Uscanga-Ramirez. They did not read him Miranda warnings. They asked him if he had a permit for the revolver, and he admitted that he did not. When asked where he got the revolver, Uscanga-Ramirez responded that he had bought it from a friend on the street about "six months ago." The officers seized the revolver, because Uscanga-Ramirez did not have a permit. They did not arrest Uscanga-Ramirez.

## II.

In the district court, Uscanga-Ramirez filed a motion to suppress, in which he sought to exclude the revolver and his statements from trial. Uscanga-Ramirez argued that the officers violated the Fourth Amendment when they entered his bedroom without a warrant and searched for the revolver. He argued that they violated the Fifth Amendment when they questioned him without giving him Miranda warnings. After holding an evidentiary hearing, the magistrate judge recommended that the district

court suppress the statements but not the revolver. Uscanga-Ramirez filed timely objections to the report and recommendation, insofar as it did not recommend suppression of the revolver. After conducting the required de novo review pursuant to 28 U.S.C. § 636(b)(1), see United States v. Lothridge, 324 F.3d 599, 600-01 (8th Cir. 2003), the district court adopted the report and recommendation. Uscanga-Ramirez later entered a conditional guilty plea to being an illegal alien in possession of a firearm and ammunition, see Fed. R. Crim. P. 11(a)(2), and the district court sentenced him to ten months of imprisonment and three years of supervised release. Uscanga-Ramirez now appeals the district court's partial denial of his motion to suppress.

## III.

On appeal from a denial of a motion to suppress, we review a district court's factual findings for clear error and its conclusions of law de novo. United States v. Durham, 470 F.3d 727, 733 (8th Cir. 2006) (citing United States v. Velazquez-Rivera, 366 F.3d 661, 664 (8th Cir. 2004)).

## IV.

The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. It is a "'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" Groh v. Ramirez, 540 U.S. 551, 559 (2004) (quoting Payton v. New York, 445 U.S. 573, 586 (1980)). Uscanga-Ramirez argues that the officers were not justified in entering his bedroom without a warrant and conducting a warrantless search under his pillow.

The district court held that the officers did not violate the Fourth Amendment in entering Uscanga-Ramirez's bedroom without a warrant because of the consent and

exigent-circumstances exceptions to the warrant requirement. The district court also upheld the search under the pillow based upon the exigent-circumstances exception to the warrant requirement. Uscanga-Ramirez argues that the district court's reliance on those exceptions to the warrant requirement is misplaced.

**A.**

Consent to search is a valid exception to the warrant requirement if the consent is knowingly and voluntarily given. United States v. Sanders, 424 F.3d 768, 773 (8th Cir. 2005). Generally, "the consent of one who possesses common authority over premises . . . is valid as against the absent, nonconsenting person with whom that authority is shared." United States v. Matlock, 415 U.S. 164, 170 (1974). Uscanga-Ramirez does not dispute that Lisa Olson knowingly and voluntarily allowed the officers to enter the home, a premises over which the two possessed common authority. Instead, relying on Georgia v. Randolph, 126 S. Ct. 1515 (2006), Uscanga-Ramirez argues that Lisa Olson's consent, standing alone, is an insufficient basis for the officers' entry into the home without a warrant.

In Randolph, law enforcement officers talked to the defendant and his wife in the doorway to their house. 126 S. Ct. at 1519. One officer asked the defendant for permission to search his house, and he refused. Id. The same officer then asked the wife for her consent. Id. She agreed, and the officers searched the house. Id. The Supreme Court suppressed the evidence gained from the search. Id. at 1526. The Supreme Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." Id.

Randolph is clearly distinguishable. There is no evidence that Uscanga-Ramirez expressly refused the officers' entry into the home at any time. Id. Therefore, Randolph does not render the officers' entry into the home unreasonable.

## B.

Exigent circumstances is another exception to the warrant requirement. <u>United States v. Chipps</u>, 410 F.3d 438, 442 (8th Cir. 2005) (citing <u>United States v. Collins</u>, 321 F.3d 691, 694-95 (8th Cir. 2003)). "We have long held the 'view that legitimate concern for the safety of individuals may constitute "exigent circumstances" justifying warrantless entries . . . .'" <u>United States v. Janis</u>, 387 F.3d 682, 687 (8th Cir. 2004) (quoting <u>United States v. Antwine</u>, 873 F.2d 1144, 1147 (8th Cir. 1989)). In particular, "law enforcement officers may enter a home without a warrant . . . to protect an occupant from imminent injury." <u>Brigham City, Utah v. Stuart</u>, 126 S. Ct. 1943, 1947 (2006) (citing <u>Mincey v. Arizona</u>, 437 U.S. 385, 392 (1978)); <u>see also</u> <u>Chipps</u>, 410 F.3d at 442 ("Under the exigent-circumstances exception, . . . police may enter property without a warrant if they could reasonably believe that a person is in need of immediate assistance." (citing <u>Collins v. Bellinghausen</u>, 153 F.3d 591, 596 (8th Cir. 1998))). "'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" <u>Mincey</u>, 437 U.S. at 392 (1978) (quoting <u>Wayne v. United States</u>, 318 F.2d 205, 212 (D.C. Cir. 1963)). The inquiry is objective and "focus[es] on 'what a reasonable, experienced police officer would believe.'" <u>United States v. Kuenstler</u>, 325 F.3d 1015, 1021 (quoting <u>In re Sealed Case 96-3167</u>, 153 F.3d 759, 766 (D.C. Cir. 1998)); <u>see</u> <u>Brigham City</u>, 126 S. Ct. at 1947 (stating that the inquiry is objective and the officer's subjective motivation is irrelevant).

Even if Lisa Olson had not consented to the officers' warrantless entry into the home, exigent circumstances justified their warrantless entry into the home, entry into the bedroom[3] and search under the pillow. Clearly, the officers were justified in

---

[3]Uscanga-Ramirez also argues that the district court erred when it held that the officers' warrantless entry into his bedroom was justified pursuant to the consent exception. Uscanga-Ramirez maintains that his consent was not knowing and voluntary. Because we hold that exigent circumstances justified the entry into the bedroom, we need not address this argument.

entering the home and bedroom without a warrant. The officers had reliable information that Uscanga-Ramirez had locked himself in a bedroom with a gun and that he was very upset over the disintegration of his marriage. When the circumstances are viewed objectively, Brigham City, 126 S. Ct. at 1947, the officers were justified in entering the house and bedroom to make sure that Uscanga-Ramirez would not seriously injure or kill himself. See, e.g., id.; see also Janis, 387 F.3d at 687-88 (holding warrantless entry into home was justified, in part, because the officers needed "to secure [a] weapon so others would not be harmed").

Officer Hinton's warrantless search under the pillow was also reasonable. Law enforcement officers may search a home without a warrant when ""'"the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" Brigham City, 126 S. Ct. at 1947 (quoting Mincey, 437 U.S. at 393-94). It was objectively reasonable for Officer Hinton to quickly conduct a limited search under the pillow for a gun. The pillow was within Uscanga-Ramirez's reach and capable of hiding a gun, and Officer Hinton reasonably perceived a risk of danger to everyone in the room. See, e.g., United States v. Quezada, 448 F.3d 1005, 1007 (8th Cir. 2006) ("Examples of [exigent] circumstances [include] . . . when an officer . . . reasonably perceives a risk of danger to the police or others." (citing Minnesota v. Olson, 495 U.S. 91, 100 (1990))). Although Uscanga-Ramirez denied possessing a gun, the officers were objectively justified in disbelieving him. Lisa Olson had told the officers that there was a gun in the bedroom, and the pillow was, in fact, misplaced. Given the close quarters, the search under the pillow was necessary to ensure the safety of Uscanga-Ramirez and the officers.

"The touchstone of the Fourth Amendment is reasonableness . . . ." Samson v. California, 126 S. Ct. 2193, 2201 n.4 (2006). Viewed in their totality, the officers' actions were reasonable.

## V.

The district court correctly denied, in part, Uscanga-Ramirez's motion to suppress.  Accordingly, we affirm.

_____