# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2642
_____

United States of America

*Plaintiff - Appellee*

v.

James P. Roberts

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 10, 2016
Filed: June 8, 2016

_____

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Police officers accidentally knocked open James Roberts's apartment door while looking for a potentially dangerous homicide suspect. Rather than stand in the open doorway as easy targets, the officers entered the apartment. They found a loaded handgun, some marijuana, and Roberts, who said something suggesting the gun was his. Roberts was convicted of possessing the gun as a felon. See 18 U.S.C.

§ 922(g)(1). He appeals, arguing the district court[1] should have suppressed the evidence from the apartment. We disagree.

The police had traced a cell phone they thought belonged to a suspect in a deadly shooting the day before and identified an apartment in Kansas City, Missouri. The suspect, they had been told, may have been named James. While the officers were watching the apartment, a man exited the apartment. Two detectives approached and one asked the man what he was doing there. The man said he was visiting his friend James. The detective smelled marijuana and thought the man might be high.[2]

The police decided to talk to the identified James. When an officer knocked on the door—a hard "police knock"—and announced "police officers," the door swung open.[3] James Roberts was sitting on a couch just inside the door. The police smelled marijuana and saw something green and leafy smoldering in an ashtray nearby. One officer thought Roberts looked "befuddled" and might have been high. Another thought Roberts looked "scared" and nervous, "almost as if he's going to flee, like I don't know what I'm going to do here." Both officers thought Roberts might be the shooter they were looking for and were afraid for their safety while

---

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

[2]The detective also thought it strange the man was sweating despite the seven-degree cold weather, though we note the man had just come from indoors, where it was presumably warmer.

[3]An important factor in our review is the district court did not discredit the officers' testimony. See, e.g., United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995) ("A district court's determination as to the credibility of a witness is virtually unreviewable on appeal.").

"bunched up" in "the fatal funnel of the doorway," so they quickly stepped into the room, spread apart, and told Roberts to raise his hands.

As the police approached Roberts, he lowered his hands, and the police saw a gun on the couch. An officer pulled Roberts off the couch and put him in handcuffs. Roberts then said something along the lines of "if you want to throw a pillow on that gun, you can—that's fine with me," which one of the officers understood to mean "he didn't want us to take that gun, because he had just gotten out of prison." The police seized the "green leafy substance" and the gun, which turned out to be loaded, and they arrested Roberts.

Roberts appeals his resulting conviction for possessing a gun as a felon. See 18 U.S.C. § 922(g)(1). Roberts insists the evidence from the apartment, including testimony about what he said, should have been suppressed as the fruits of an illegal warrantless entry. The district court denied Roberts's suppression motion on the ground that exigent circumstances—namely, the perceived threat to the officers' safety—obviated the need for the police to get a warrant before entering the apartment. See, e.g., United States v. Kuenstler, 325 F.3d 1015, 1021-22 (8th Cir. 2003). We review such legal conclusions de novo, accepting the underlying factual findings unless they are clearly erroneous. See id. at 1021.

Roberts's argument on appeal is that the entry could not have been justified by safety concerns because the police "were already inside the residence at the time the alleged exigency occurred."[4] When the door opened unexpectedly after a hard police knock, the officers found themselves caught off-guard, isolated, and framed in an open doorway to an apartment they thought might contain a gunman—potentially still

---

[4]Roberts does not dispute the gun and marijuana were plainly visible from inside the room, so the seizure was legal if the entry was legal. See, e.g., United States v. Bustos-Torres, 396 F.3d 935, 944 (8th Cir. 2005).

armed and dangerous—facing someone who matched what they knew about the suspect and whom they had reason to believe might be under the influence of drugs and liable to act unpredictably. Experienced officers confronted by such an event would have readily realized the risk of staying where they were and reasonably could have decided to reduce the danger by moving into the room to control the situation.[5] See Kuenstler, 325 F.3d at 1021 ("The analysis . . . is an objective one 'focusing on what a reasonable, experienced police officer would believe.'" (quoting In re Sealed Case 96-3167, 153 F.3d 759, 766 (D.C. Cir. 1998))).

As Roberts points out, we have not previously considered an exigent-circumstances case with facts quite like these. But we do not think this situation was so much less threatening than those in our prior cases such that the officers' concern for their safety was unreasonable here. See, e.g., Kuenstler, 325 F.3d at 1021-22 (upholding the search of a house for additional threats after one occupant tried to flee, another yelled and charged at police, and a third watched from the doorway); United States v. Vance, 53 F.3d 220, 221-22 (8th Cir. 1995) (holding officers could follow someone into his house, where the individual said he was getting his identification, when the officers had been told there were other people and weapons inside); United States v. McConnell, 903 F.2d 566, 569-70 (8th Cir. 1990) (accepting an officer's entry into a hotel room when the occupant was staying at the hotel despite living locally, had moved from a different room at the same hotel, left a handgun in the first room, and lied about his name and whether someone was with him); United States v. Hill, 730 F.2d 1163, 1169-70 (8th Cir. 1984) (permitting officers' entry into a house to locate an occupant when the officers were going to execute a search warrant

_____

[5]Contrary to Roberts's suggestion that safety concerns could not justify the entry because the officers "left themselves exposed" through their own actions, the exigent-circumstances exception applies as long as "the conduct of the police preceding the exigency is reasonable"—meaning consistent with the Fourth Amendment—even if that conduct arguably set the exigency in motion. Kentucky v. King, 563 U.S. 452, 462 (2011).

outside and saw through a glass door a gun inside the house); see also United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996) (suggesting a reasonable officer would think an armed suspect who ran into a house when the police approached "presented a threat to the lives of the officers outside").

In short, on the facts of this case, when the apartment door unexpectedly opened, the officers reasonably felt in danger and faced a split-second choice between entry and retreat. We refuse to hold the officers' only reasonable response was to retreat. See Vance, 53 F.3d at 222 n.4 ("Law enforcement officers are not required to avoid danger."). Roberts's conviction is affirmed.

———————————————