# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 16-4519

———————————————

United States of America

*Plaintiff - Appellant*

v.

Curlie Marque Quarterman

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Davenport

——————————

Submitted: October 20, 2017
Filed: December 12, 2017

——————————

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

——————————

BENTON, Circuit Judge.

Without a warrant, police officers entered Curlie M. Quarterman's apartment and seized a gun from a holster on his waist. The government charged him as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court granted Quarterman's motion to suppress the gun and derivative evidence. Having jurisdiction under 18 U.S.C. § 3731, this court reverses and remands.

At 7:16 a.m. on a Saturday, Carol Bak called 911. She said she was helping her daughter, Christina Bak, move out of Quarterman's apartment. He was Christina's boyfriend. Carol Bak reported having been in a "heated" verbal altercation with Quarterman. Quarterman "got in [her] face" and "had a gun on his waist." After the altercation, she left, leaving Christina Bak inside the apartment.

Dispatch radioed a "domestic with a weapon involved" to Sergeant Robert Jackson. He, with Deputy Peter Bawden and a third officer, arrived outside the apartment building at 7:36 a.m. Carol Bak repeated what she said on the 911 call. She also said Quarterman was "making [Christina] get out" of his apartment.

Around 7:38 a.m., concerned for the safety of Christina Bak, Sergeant Jackson and Deputy Bawden went to the apartment. Approaching, they heard voices in normal tones. They knocked; Christina Bak answered. She said "Hello," then "Yeah," and stepped back. Through the open door, the officers saw packed bags and boxes, and a man (later identified as Quarterman) sitting on the sofa. Sergeant Jackson asked, "Can we step in?" Deputy Bawden then saw Quarterman moving on the couch. He testified Quarterman was "moving his hands quickly and kind of scooting over or trying to stand up from the couch in a hurry . . . ." He also testified it looked like Quarterman was reaching toward the couch. Considering this "an indicator of fight or flight," he said, "No, no don't you move fast." Christina Bak said, "What's wrong? What's wrong?" The officers asked about the gun. Christina Bak did not respond. Asked if he had a gun, Quarterman said, "No." Sergeant Jackson announced, "We are going to come in for a few minutes." He entered the apartment, placing himself between Christina Bak and Quarterman. Deputy Bawden moved just inside the doorway.

Sergeant Jackson told Quarterman to keep his hands up, stand up, and turn around. Quarterman stood up, beginning to turn his body. Deputy Bawden testified he was "blading" his body, standing as a boxer does, flat-footed with a shoulder pointed toward an individual. The officers saw the handgun holstered on his right side. Deputy Bawden testified he noticed the gun when he saw Quarterman's right hand lowering toward his waist. The officers ordered him against the wall, seizing the gun. All of this, from the knock to seeing the gun, occurred in about 35 seconds.

Sergeant Jackson told Quarterman he would return the gun once they were finished talking. Another deputy discovered it was stolen. The officers arrested Quarterman.

Quarterman moved to suppress the gun and derivative evidence. He argued that the warrantless entry violated the Fourth Amendment. The Government invoked exigent circumstances. The district court granted the motion, concluding that the entry and search were unconstitutional. The court found neither exigent circumstances nor probable cause.

This court reviews de novo the question whether exigent circumstances justified warrantless entry or search. *United States v. Roberts*, 824 F.3d 1145, 1146 (8th Cir. 2016).

## II.

"The ultimate touchstone of the Fourth Amendment . . . is reasonableness." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam) (internal quotation marks omitted), *quoting Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). This court must determine whether the officers' actions, "[v]iewed in their totality," were reasonable. *United States v. Uscanga-Ramirez*, 475 F.3d 1024, 1029 (8th Cir. 2007).

Warrantless searches inside a home are "presumptively unreasonable," but not if "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Stuart*, 547 U.S. at 403 (internal quotation marks omitted), *quoting Payton v. New York*, 445 U.S. 573, 586 (1980) *and Mincey v. Arizona*, 437 U.S. 385, 394 (1978).

"One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Id.* This exigency justifies warrantless entry or search if officers have an "objectively reasonable basis for believing . . . that a person within the house is in need of immediate aid . . . ." *Fisher*, 558 U.S. at 47 (internal quotation marks and citations omitted), *quoting Stuart*, 547 U.S. at 406 *and Mincey*, 437 U.S. at 392. Also justifying warrantless entry or search is an objectively reasonable belief of a threat to officer safety. *See United States v. Kuenstler*, 325 F.3d 1015, 1021 (8th Cir. 2003) ("Exigent circumstances exist where law enforcement officers have a legitimate concern for themselves or others. . . . The analysis of whether this exception to the warrant requirement has been made out is an objective one focusing on what a reasonable, experienced police officer would believe." (internal quotation marks and citations omitted)).

### III.

The warrantless entry was justified by a legitimate and objectively reasonable concern for the safety of Christina Bak and the officers. They had information that Quarterman was making Christina Bak move out, he was armed, and he had been in a heated verbal altercation with her mother that morning. After Christina Bak opened the door, Quarterman made quick movements as if reaching toward the couch or getting up. Unable to see the gun from the doorway and aware that domestic disputes can turn violent, the officers decided to enter and control the situation.

This court's decision in *Roberts* is instructive. *See* 824 F.3d at 1146-47. There, officers believed that a suspect in a deadly shooting was inside the apartment. *Id.* at 1146. When they knocked on the apartment door, it swung open and they saw a man sitting on the couch. *Id.* He looked "high," "scared," "nervous," and "almost as if he's going to flee." *Id.* Afraid for their safety, the officers entered and told the suspect to raise his hands. *Id.* This court held that the officers were justified in entering without a warrant:

> Experienced officers confronted by such an event would have readily realized the risk of staying where they were and reasonably could have decided to reduce the danger by moving into the room to control the situation. . . . In short, on the facts of this case, when the apartment door unexpectedly opened, the officers reasonably felt in danger and faced a split-second choice between entry and retreat. We refuse to hold the officers' only reasonable response was to retreat.

*Id.* at 1147 (internal citations omitted).

Here, the officers were responding to a potentially dangerous situation. Once the door opened, Quarterman's response to the officers' presence heightened and accelerated their concerns, both for themselves and also for Christina Bak.

Quarterman argues that the threat of danger here was not as great as in *Roberts*. But this court has consistently found exigent circumstances where officers reasonably believe a gun or an armed individual presents a danger to others or themselves. *See United States v. Henderson*, 553 F.3d 1163, 1164-65 (8th Cir. 2009) (exigent circumstances justified entering a bedroom, where an armed man was with his wife and had earlier threatened to kill a man he believed was with her); *Uscanga-Ramirez*, 475 F.3d at 1029 (exigent circumstances justified entering a home "to make sure that [a man] would not seriously injure or kill himself," where officers "had reliable information that [the man] had locked himself in a bedroom with a gun and was very

upset over the disintegration of his marriage"); ***United States v. Hill***, 430 F.3d 939, 940-41 (8th Cir. 2005) (exigent circumstances justified entering a home, where officers arrested a man for aggravated robbery outside the home and then observed another man run inside the home, because "[i]n light of the aggravated robbery charges," there may have been weapons inside the home, and the man may have been running inside to get one); ***United States v. Vance***, 53 F.3d 220, 222 (8th Cir. 1995) (reaching the same conclusion as *Hill* on similar facts).

The presence of a weapon in a home does not necessarily constitute exigent circumstances. *See* ***United States v. Murphy***, 69 F.3d 237, 243 (8th Cir. 1995) ("[A] reasonable belief that firearms may have been within the residence, standing alone, is clearly insufficient to justify excusing the knock and announce requirement." (internal quotation marks omitted)). But in this case, the officers were objectively reasonable in believing that the gun presented a danger. Although Quarterman had not used, or explicitly threatened to use, the gun, he was carrying it while evicting his girlfriend and "getting in [her mother's] face" just after 7:00 a.m. Reasonable, experienced officers would not ignore the gun. That Carol Bak considered it relevant further indicated a potential danger.

This court has recognized that "domestic disturbances are highly volatile and involve large risks . . . ." ***Henderson***, 553 F.3d at 1165. Quarterman argues that this was not a domestic disturbance, because he argued only with Carol Bak, who did not live with him and was outside when the officers arrived. But the key is what the officers reasonably believed. Here, they reasonably believed that there was an ongoing dispute between Quarterman and his live-in girlfriend, as evidenced by his carrying a gun while making her move out and his earlier behavior toward her mother.

As with guns, the fact of a domestic dispute is not necessarily enough. *See* ***Smith v. Kansas City Police Dept.***, 586 F.3d 576, 580 (8th Cir. 2009) (rejecting the argument that "the fact that a domestic violence suspect was inside the home—with

a child—was an exigent circumstance"). But this court in *Smith* reasoned that no facts indicated "the suspect was a threat to the child or others" or that guns were in the home. ***Id.*** Those elements are present here, where officers had an objectively reasonable basis to believe that Quarterman was armed and a threat to Christina Bak or others.

Once lawfully inside the apartment, the exigencies of the situation justified ordering Quarterman to stand up and turn around. If officers legally enter based on a potential threat posed by a gun, they may do a limited search for it in order to prevent harm. *See **Henderson***, 553 F.3d at 1165 (after entering, exigent circumstances justified the officers' searching the bedroom in order to secure the gun, even after handcuffing the husband); ***Uscanga-Ramirez***, 475 F.3d at 1029 (after entering, exigent circumstances justified the officer's limited search under a pillow for the gun, because "[t]he pillow was within [the man]'s reach . . . and [the officer] reasonably perceived a risk of danger to everyone in the room"). That the search here involved temporarily seizing and searching Quarterman's person does not change the outcome. *See **Stuart***, 547 U.S. at 403 (stating that exigencies can justify warrantless searches of a person); ***Burke v. Sullivan***, 677 F.3d 367, 372 (8th Cir. 2012) ("[I]f the officers' entry into Burke's home was lawful [under either an emergency aid justification or a community caretaking justification], the officers' brief detention of Burke—less than two minutes—was lawful."). Although Quarterman denied having a gun, the officers were reasonable in disbelieving him. *See **Uscanga-Ramirez***, 475 F.3d at 1029. Carol Bak told them the gun was on Quarterman's hip, and the officers could reasonably believe that the man on the couch was Quarterman. His reactions to the presence of the officers also indicated that he may have been armed.

Finally, when the officers saw the gun on Quarterman's waist, they were reasonable in temporarily seizing it. *See **United States v. Lewis***, 864 F.3d 937, 946 (8th Cir. 2017) ("[A] police officer who discovers a weapon in plain view may at least temporarily seize that weapon if a reasonable officer would believe, based on specific

and articulable facts, that the weapon poses an immediate threat to officer or public safety.").

## IV.

The district court relied on cases suggesting that probable cause is also required. *See* **Kleinholz v. United States**, 339 F.3d 674, 676 (8th Cir. 2003) ("[E]xigency may be substituted for a warrant, but probable cause must be present before either a warrant or exigency will allow a search."), *citing* **United States v. Walsh**, 299 F.3d 729, 733 (8th Cir. 2002) ("A warrantless search is reasonable when justified by both probable cause and exigent circumstances.").

*Kleinholz* and *Walsh* do not control here. They address warrantless entry and search justified by the "volatile nature" of illegal methamphetamine labs. **Kleinholz**, 339 F.3d at 677, *citing* **Walsh**, 299 F.3d at 734. The probable cause required there is that a lab is inside. **Kleinholz**, 339 F.3d at 676-77. Likewise, there must be probable cause of evidence in cases involving entry and search justified by a risk of removal or destruction of evidence, *e.g.*, *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1004 (8th Cir. 2010), and probable cause that a crime has been committed in cases involving entry and search justified by "hot pursuit of a fleeing suspect," *e.g.*, *United States v. Schmidt*, 403 F.3d 1009, 1013 (8th Cir. 2005). But this is not a blanket rule for all cases of "exigency" or "exigent circumstances." These terms encompass a broad range of scenarios. *See, e.g.*, **Birchfield v. North Dakota**, 136 S. Ct. 2160, 2173 (2016) ("[The exigent circumstances exception] permits, for instance, the warrantless entry of private property when there is a need to provide urgent aid to those inside, when police are in hot pursuit of a fleeing suspect, and when police fear the imminent destruction of evidence." (citing **Kentucky v. King**, 563 U.S. 452, 460 (2011))); **Michigan v. Tyler**, 436 U.S. 499, 509 (1978) ("A burning building clearly presents an exigency . . . . [I]t would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze.").

If officers have an objectively reasonable basis that some immediate act is required to preserve the safety of others or themselves, they do not also need probable cause. *See Fisher*, 558 U.S. at 47 (stating that the "emergency aid exception," from *Stuart*, "requires *only* an objectively reasonable basis for believing that a person within the house is in need of immediate aid" (emphasis added) (internal quotation marks and citations omitted) (quoting *Stuart*, 547 U.S. at 406 and *Mincey*, 437 U.S. at 392)); *Stuart*, 547 U.S. at 403 ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." (quoting *Mincey*, 437 U.S. at 392)); *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989) (recognizing the "longstanding principle that neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance"). *See generally, e.g.*, *Roberts*, 824 F.3d 1145 (not assessing probable cause in finding that a legitimate and immediate concern for safety justified warrantless entry or search); *Uscanga-Ramirez*, 475 F.3d 1024 (same); *Kuenstler*, 325 F.3d 1015 (same). Requiring probable cause for all exigency cases would frustrate the role of "peace officer," which "includes preventing violence and restoring order . . . ." *Stuart*, 547 U.S. at 406.

The district court erred in suppressing the gun and derivative evidence.

\* \* \* \* \* \* \*

The judgment is reversed, and the case remanded for proceedings consistent with this opinion.

_____