# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1425
_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Douglas Black

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: January 17, 2025
Filed: February 25, 2025
_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Christopher Black pleaded guilty to three counts of production of child pornography, *see* 18 U.S.C. § 2251(a) and (e), one count of receipt of child pornography, *see id.* § 2252(a)(2) and (b)(1), and one count of possession of child

pornography, *see id*. § 2252(a)(4)(B) and (b)(2).  The district court[1] sentenced him to 720 months' imprisonment.  On appeal, Black argues that the district court erred by denying his motion to suppress evidence obtained through two warrantless searches.  He also appeals the substantive reasonableness of his sentence.  Finding no reversible error, we affirm.

## I.

In December 2021, the FBI began investigating the disappearance of a fourteen-year-old girl, A.W.  The FBI obtained A.W.'s phone location data, which indicated that she was in Keokuk, Iowa.  Investigators later learned that A.W.'s phone number was being used by a man named Shelby Kelly, who obtained that phone number after receiving a SIM card from Black.  The FBI learned that Black had been, and in some cases remained, the subject of investigations in Iowa and Illinois for sex crimes involving juveniles.  Black had previously been investigated regarding the disappearance of a seventeen-year-old girl and was suspected of filming juveniles in hotel rooms, offering cocaine to a juvenile, and having images and videos of child pornography on his phone.

FBI agents discovered that a Facebook account associated with Black had recently been logged into from an address in Keokuk.  The address was an Airbnb with two bookable rooms.  The agents contacted the Airbnb owner, who told them that one of the bookings was registered under a profile named "Andre Sanchez," whose profile picture one of the agents recognized as a photograph of Black.  Additionally, one of the guests checked in under the name "Christopher," and a vehicle registered to Black's mother was parked under the carport.  The Airbnb owner told the FBI agents that the room booked by "Sanchez" was occupied by two adult males and a female perhaps as young as fourteen.  The other adult male

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa, adopting the Report and Recommendation of the Honorable Stephen B. Jackson, Jr., Chief Magistrate Judge, United States District Court for the Southern District of Iowa.

occupant was later identified as Kelly. The FBI suspected that A.W. was the young female occupant.

On January 5, 2022, FBI agents arrived at the Keokuk Airbnb to investigate. The agents did not have a warrant to enter the room booked by "Sanchez," but the door was open and the agents could see two drinks and what appeared to be a woman's jacket or sweatshirt on the kitchen counter. An agent knocked on the door and called out; nobody answered but the door opened further. The Airbnb owner entered and checked the room while the agents waited outside the entrance. The owner reported that nobody was present, but that the bathroom door was closed and locked, and that after the owner knocked on the door, nobody answered. Concerned that someone might have been inside the bathroom and in need of medical attention, agents entered the room, found the bathroom key, and opened the bathroom door. Nobody was inside, but one of the agents noticed a woman's razor on the bathmat. The agents then left the Airbnb.

Over the following weeks, the FBI continued its investigation and obtained further information about A.W.'s disappearance. On January 11, an FBI agent located Black (but not A.W.) outside his Keokuk residence and interviewed him. Black acknowledged having stayed at the Keokuk Airbnb with Kelly and A.W., the latter of whom he claimed he thought was around 20 years old, and that they had watched television together.

The FBI also interviewed witnesses who suggested that A.W. was present at the Keokuk Airbnb the day of the search but ran out after seeing agents coming. One witness in particular heard Black state something to the effect that he needed to get A.W. "out of town because the feds are looking for her." Based on these witness reports, the FBI believed that Black and A.W. were attempting to evade law enforcement.

Other evidence suggested that Black tried to hide his location from law enforcement. Airbnb records showed that "Andre Sanchez" made several rental

reservations with overlapping dates. Weeks later, Black took control over a different Airbnb profile under the name "Jason Gustavson." The "Gustavson" account had three active reservations, each of which the FBI began surveilling in hopes of locating A.W.

On February 16, FBI agents positively identified Black alongside a female who resembled A.W. in the backyard of an Airbnb in Minneapolis rented under the "Gustavson" profile. After the two returned indoors, the FBI agents knocked on the front door. Black answered and identified himself by name, and the agents detained him immediately. The agents then entered the Airbnb—without a search warrant— and the female emerged; she was positively identified as A.W. While indoors, the agents saw in plain view, *inter alia*, sex toys, stained bedding, and possible drug paraphernalia.

Afterwards, the FBI obtained a search warrant for the Minneapolis Airbnb. Upon executing the warrant, agents seized Black's phone which showed that he used A.W. to produce child pornography on four occasions. The phone also contained 324 images and 115 videos depicting child pornography of other children, including those as young as toddlers.

A grand jury indicted Black for three counts of production of child pornography, one count of receipt of child pornography, and one count of possession of child pornography. Black moved to suppress the evidence based upon the warrantless entries into the Airbnbs in Keokuk and Minneapolis and from later searches executed pursuant to warrants issued after those warrantless entries. The magistrate judge found that the warrantless entries into the Keokuk and Minneapolis Airbnbs were justified based on exigent circumstances. The district court accepted the magistrate judge's report and recommendation and denied Black's motion to suppress.

On September 14, 2023, Black entered a conditional guilty plea, pleading guilty to all counts but preserving his right to appeal the district court's denial of his

motion to suppress. *See* Fed. R. Crim. P. 11(a)(2). The district court sentenced him to 720 months' imprisonment, below the advisory guidelines term of 1,560 months' imprisonment.[2] Black appeals, challenging the denial of his motion to suppress and the substantive reasonableness of his sentence.

## II.

We begin with the motion to suppress. "When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its Fourth Amendment determination de novo." *United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011).

The Government argues that exigent circumstances justified the warrantless searches of the Airbnbs. "Exigent circumstances include threats to an individual's life, a suspect's imminent escape, the imminent destruction of evidence, or situations where there is a compelling need for official action and there is no time to secure a warrant." *Smith v. Kansas City, Mo. Police Dep't*, 586 F.3d 576, 580 (8th Cir. 2009) (internal quotation marks omitted). Whether exigent circumstances existed is an objective inquiry "focusing on what a reasonable, experienced police officer would believe." *United States v. Quarterman*, 877 F.3d 794, 797 (8th Cir. 2017). We review a district court's conclusion that exigent circumstances justified warrantless entry *de novo*, "accepting the underlying factual findings unless they are clearly erroneous." *United States v. Roberts*, 824 F.3d 1145, 1146 (8th Cir. 2016).

The FBI agents had objectively reasonable bases for presuming that exigent circumstances justified the warrantless search of the Keokuk Airbnb. A.W. was a minor girl whom the FBI believed to be in the company of a man who had a history of sexual interest in minors, who collected pornographic images of minors, and who provided drugs to minors. Given this background, combined with the fact the

---

[2]Black's total offense level of 43 and criminal history category of I result in a guidelines range of life imprisonment. However, given statutory maximums, his guidelines range drops to 1,560 months. *See* U.S.S.G. § 5G1.2 cmt. n.3(B).

bathroom door was locked, the agents reasonably feared that A.W. might have been unresponsive in the bathroom and in need of immediate medical attention. Concerns about risk of injury are especially acute when the potential victim is a minor subject to sexual exploitation. *See United States v. Gilliam*, 842 F.3d 801, 804 (2d Cir. 2016). The possible "threats" to A.W.'s "life . . . [and] compelling need for official action" in a timely manner constituted exigent circumstances justifying the warrantless entry into the Keokuk Airbnb. *See Smith*, 586 F.3d at 580.

Exigent circumstances also justified the warrantless search of the Minneapolis Airbnb. By the time of the search, the FBI had learned that A.W. fled from the Keokuk Airbnb to avoid detection. The FBI had heard a witness report that Black stated that he needed to get A.W. "out of town because the feds are looking for her." Black also had multiple concurrent Airbnb bookings under a pseudonym. It was apparent that Black and A.W. were attempting to avoid detection by the FBI. Before knocking on the door of the Minneapolis Airbnb, the FBI had already positively identified Black as the male occupant of the property, and the girl accompanying him matched A.W.'s description. The warrantless entry was justified to prevent Black and A.W. from fleeing or destroying evidence. *See Smith*, 586 F.3d at 580. Given the exigent circumstances, the FBI's warrantless searches did not violate the Fourth Amendment. Accordingly, the district court did not err in denying Black's motion to suppress evidence obtained from those searches.

We next address Black's sentence. "We review a district court's sentence in two steps, first reviewing for significant procedural error, and second, if there is no significant procedural error, we review for substantive reasonableness." *United States v. Ayres*, 929 F.3d 581, 582-83 (8th Cir. 2019). At sentencing, Black agreed that the district court did not procedurally err by miscalculating the guidelines range, and he makes no such challenge on appeal. Instead, Black argues that the guidelines range, though calculated properly, overstates the seriousness of his offense. He further contends that the district court's decision to impose consecutive, instead of concurrent, sentences for the separate counts of production of child pornography and possession of child pornography—which a court may do in order for the total

sentence to reach the guidelines range, *see* U.S.S.G. § 5G1.2(d)—led to a substantively unreasonable sentence.

We review challenges to the substantive reasonableness of a sentence for abuse of discretion. *United States v. Maluoth*, 121 F.4th 1158, 1163 (8th Cir. 2024). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (internal quotation marks omitted).

The district court did not abuse its discretion in sentencing Black to 720 months' imprisonment. Black's argument is effectively a policy challenge to the district court's refusal to vary further from the guidelines range. Black correctly points out that a district court is permitted in appropriate circumstances to vary from the guidelines if it disagrees with the policies underlying the guidelines, *Pepper v. United States*, 562 U.S. 476, 501 (2011), and instead "tailor [its] sentence in light of other statutory concerns," such as "the factors listed in [18 U.S.C.] § 3553(a)." *Id.* at 490. Indeed, one such factor is the policy value of "impos[ing] a sentence sufficient, but not greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a). But just because a district court *may* vary from the guidelines does not mean that it *must* do so. *See Maluoth*, 121 F.4th at 1164. And when we review the district court's judgment in this respect on appeal, we must recognize that "[t]he sentencing judge has greater familiarity with a case than an appellate court and is therefore in a superior position to find facts and judge their import under § 3553(a)." *See id.* (internal quotation marks omitted). Additionally, the district court already sentenced Black to a below-guidelines term, and "it is nearly inconceivable" that a district court imposing a below-guidelines sentence "abused its discretion in not varying downward still further." *United States v. Gifford*, 991 F.3d 944, 947 (8th Cir. 2021). Accordingly, we detect no abuse of discretion by the district court.

## III.

For the forgoing reasons, we affirm the judgment of the district court.

_____