United States of America v. Gilliam

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2016

Heard:  September 29, 2016        Decided: December 1, 2016

Docket Nos. 15-387

- - - - - - - - - - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,
        Appellee,


              v.

JABAR GILLIAM, AKA Jamal Gilliam, AKA Jabal
Gilliam, AKA JB,
        Defendant-Appellant.
- - - - - - - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN, WINTER, and CABRANES, <u>Circuit Judges</u>.

Appeal from the January 28, 2015, judgment of the District Court for the Southern District of New York (Thomas P. Griesa, District Judge), convicting Jabar Gilliam after a jury trial of offenses concerning sex trafficking of a minor and sentencing him to 240 months of imprisonment. Gilliam contends primarily that the District Court erred in denying his motion to suppress his cell

phone's location information, which had been supplied, at the Government's request, by a telecommunications company.

Affirmed.

Robert A. Culp, Law Office of Robert A. Culp, Garrison, NY, for Appellant.

Kristy J. Greenberg, Asst. U.S. Atty., New York, NY (Preet Bharara, U.S. Atty., Adam S. Hickey, Asst. U.S. Atty., New York, NY, on the brief), for Appellee.

JON O. NEWMAN, Circuit Judge:

The principal issue on this appeal from a conviction for sex trafficking involving a minor is whether information from a global positioning system ("GPS") can be obtained and used without a warrant to locate a suspect. This issue arises on an appeal by Jabar Gilliam from the January 28, 2015, judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, District Judge). Gilliam was convicted of sex trafficking offenses after a jury trial and sentenced to imprisonment for 240 months.

2

We conclude that exigent circumstances justified obtaining and using GPS location information without a warrant and therefore affirm.

## Background

*Offense conduct.* The Defendant's offenses concern sex trafficking of a minor known as Jasmin. She recounted at trial the facts concerning Gilliam's offenses. Gilliam met Jasmin in Maryland in late October or early November 2011. She was sixteen at the time, but told Gilliam that she was seventeen. Gilliam asked Jasmin to work for him as a prostitute after she told him she was working for another pimp. Gilliam told Jasmin that he was going to take her to New York, where she could work for him.

Jasmin worked for Gilliam as a prostitute in Maryland in November 2011. On two occasions he punched her. On one occasion he had sex with her against her will in a hotel room and on November 30, Gilliam brought Jasmin to New York City after threatening to require her fifteen-year-old sister to work as a prostitute for him if Jasmin refused to go. Gilliam purchased Jasmin's bus ticket for the trip, and on the ride to New York City, Gilliam told Jasmin to sit

3

near the window and then put his legs up beside her so that Jasmin could not get out of her seat. Gilliam brought Jasmin to his mother's apartment in the Bronx, where he had sex with her against her will. Jasmin worked as a prostitute for Gilliam in the Bronx, giving him all the money that she earned.

*Locating and arresting Gilliam.* On November 30, Jasmin's foster mother reported to the Sheriff's Office in Frederick County, Maryland, that Jasmin was missing from home. The foster mother told authorities that Jasmin had mentioned a "boyfriend," known to her as "Jabar," who was later identified as Gilliam. On December 2, the case was referred to the Maryland State Police, which assigned Corporal Chris Heid to investigate. Corporal Heid spoke with Jasmin's social worker, who expressed concern that Jasmin was being forced into prostitution by Jabar Gilliam. The social worker based her concern on conversations with Jasmin's biological mother. Heid then spoke with Jasmin's biological mother, who confirmed this information. She told Heid that Gilliam had communicated with her directly and told her that he was planning to take Jasmin to New York to work there as a prostitute.

On that same day, based on this information, Heid contacted Sprint Corporation ("Sprint"), a telecommunications company. He told Sprint that he was "investigating a missing child who is . . . being prostituted," and requested GPS location information for Gilliam's cell phone. Heid said that he was making the request because of "an exigent situation involving . . . immediate danger of death or serious bodily injury to a[] person." Sprint complied with Heid's request and began providing real-time GPS location information to the Maryland State Police, which passed the information on to the FBI and the New York City Police Department ("NYPD)".

Also on December 2, Jasmin placed a phone call to her biological mother from the Bronx apartment of Gilliam's mother. NYPD officers went to that apartment and questioned Gilliam's mother. Location information provided by Sprint indicated that Gilliam's cell phone was a few blocks away. Canvassing the neighborhood, two NYPD officers saw Gilliam and Jasmin on the street and followed them to the third floor of an apartment building. When an officer confronted Gilliam, he attempted to flee. A scuffle ensued, after which Gilliam was arrested.

*Charges, trial, and conviction.* A grand jury charged Gilliam in Count One with sex trafficking of a minor by force, fraud, or coercion in violation of 18 U.S.C. §§ 1591(a), (b)(1), and (b)(2), and in Count Two with transporting a minor in interstate commerce for purposes of prostitution in violation of 18 U.S.C. § 2423(a). Gilliam was convicted on both counts after a jury trial and sentenced to imprisonment for 240 months.

## Discussion

### I. Use of GPS Location Information

The District Court denied Gilliam's motion challenging the use of GPS location information to determine where Gilliam was, information that led to his arrest. The Court ruled that the Stored Communications Act, 18 U.S.C. § 2702(c)(4), authorized, and exigent circumstances permitted, Corporal Heid to obtain location information from Sprint without a warrant.

Section 2702(c)(4) provides:

> A provider . . . may divulge a record or *other information* pertaining to a subscriber . . . (not including the contents of communications covered by [other subsections]) –
>     . . .
>     (4) to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical

injury to any person requires disclosure without delay of information relating to the emergency.

18 U.S.C. § 2702(c)(4) (emphasis added).

The initial statutory issue presented by Sprint's disclosure of GPS location information is whether it was "other information" within the meaning of subsection 2702(c)(4). Congress intended the phrase "other information" to cover "information about the customer's use of the service." S. Rep. No. 99-541, at 38 (1986). Several district courts have interpreted the phrase to include the location of a customer's cell phone. *See United States v. Graham*, 846 F. Supp. 2d 384, 396 (D. Md. 2012) (subsequent history omitted); *In re Application of the United States for an Order Authorizing the Release of Historical Cell-Site Info.*, 809 F. Supp. 2d 113, 125 (E.D.N.Y. 2011); *In re Application of the United States for Prospective Cell Site Location Info. on a Certain Cellular Telephone*, 460 F. Supp. 2d 448, 460-61 (S.D.N.Y. 2006). We agree

that "other information" includes the location of a subscriber's cell phone.[1]

The second statutory question is whether the circumstances presented to Sprint showed "an emergency involving danger of . . . serious physical injury to any person." We think it obvious that "involving," 18 U.S.C. § 2702(c)(4), includes a realistic threat of such injury, not just a completed injury. That statutory question also arises in connection with the constitutional issue presented by Sprint's disclosure at the request of a law enforcement officer and the use of that information to locate and arrest Gilliam without a warrant. That issue is whether such a disclosure and arrest without a warrant violated the Fourth Amendment.[2]

---

[1] The cited cases involve interpretation of 18 U.S.C. § 2703, a statute different from, but closely related to, section 2702. Section 2703 concerns mandatory disclosures pursuant to a warrant. Subsection 2703(c) requires disclosure of "a record or other information pertaining to a subscriber . . . (not including the contents of communications) . . . .," language identical to the language of subsection 2702(c).

[2] "[T]he Government assumes for purposes of this appeal that cell phone users have a reasonable expectation of privacy in [location] information under the Fourth Amendment." Br. for Appellee 14 n.3 at 15. We make the same assumption.

Both the second statutory issue and the Fourth Amendment issue turn on whether the circumstances known to law enforcement and presented to Sprint were within the category of "exigent circumstances" that permit warrantless searches. *See Riley v. California*, 134 S. Ct. 2473, 2487 (2014). "The core question is whether the facts . . . would lead a reasonable, experienced officer, to believe that there was an urgent need to . . . take action." *United States v. Klump*, 536 F.3d 113, 117–18 (2d Cir. 2008) (internal citations and quotation marks omitted). "A district court's determination as to whether exigent circumstances existed is fact-specific, and will not be reversed unless clearly erroneous." *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990) (in banc) (citations omitted).

We agree with the District Court that exigent circumstances justified GPS tracking of Gilliam's cell phone. The evidence available to law enforcement at the time of the search for Gilliam's location was compelling. Based on Heid's discussions with Jasmin's foster mother, social worker, and biological mother, law enforcement officers had a substantial basis to believe that Gilliam

9

was bringing Jasmin to New York City to require her to work there as a prostitute. That type of sexual exploitation of a minor has often been found to pose a significant risk of serious bodily injury. *See*, *e.g.*, *United States v. Daye*, 571 F.3d 225, 234 (2d Cir. 2009), *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015); *United States v. Curtis*, 481 F.3d 836, 838-39 (D.C. Cir. 2007). As the Ninth Circuit has observed, prostitution of a child involves "the risk of assault or physical abuse by the pimp's customers or by the pimp himself" and "a serious potential risk of contracting a sexually transmitted disease." *United States v. Carter*, 266 F.3d 1089, 1091 (9th Cir. 2001) (internal citations and quotation marks omitted).

Several courts have found that exigent circumstances justified warrantless entry into premises to avoid risk of injury to a minor held there. *See*, *e.g.*, *Hunsberger v. Wood*, 570 F.3d 546, 555 (4th Cir. 2009); *United States v. Kenfield*, 270 F. App'x 695, 696-97 (9th Cir. 2008); *United States v. Thomas*, No. 3:14-CR-00031 (RNC), 2015 WL 164075, *4-5 (D. Conn. Jan. 13, 2015); *United States v. Williams*, No. 12-CR-6152G(MWP), 2015 WL 429087, at *12-13 (W.D.N.Y.

10

Feb. 2, 2015), *report and recommendation adopted*, No. 12-CR-6152(FPG), 2015 WL 3454430 (W.D.N.Y. May 29, 2015). Locating on the streets a victim of sexual exploitation might seem to present a less immediate need for police action than entering premises where such a victim is being held, but it is nonetheless sufficient to constitute exigent circumstances.

Gilliam contends that the time required to obtain a warrant would not have significantly added to the risk of injury to Jasmin. That argument calls to mind the plight of social workers who have to decide whether to face a lawsuit for quickly removing a child from the home of an abusive parent or for failing to act in time to prevent the child's injury. "If they err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights. If they err in not removing the child, they risk injury to the child and may be accused of infringing the child's rights." *Van Emrik v. Chemung County Dep't of Social Services*, 911 F.2d 863, 866 (2d Cir. 1990). Faced with exigent circumstances based on credible information that Gilliam was engaged in prostituting a missing child across state lines, Corporal Heid acted reasonably in

11

obtaining Gilliam's cell phone location information without a warrant.

Congress has "deemed it reasonable to subordinate any individual privacy interest in cell phone location information to society's more compelling interest in preventing an imminent threat of death or serious bodily injury," and has therefore given service providers the authority to decide whether there existed an "emergency involving danger of death or serious physical injury to any person." *United States v. Caraballo*, 963 F. Supp. 2d 341, 360 (D. Vt. 2013) (citations omitted), *aff'd*, 831 F.3d 95 (2d Cir. 2016). Based on Heid's affirmation, Sprint had a good faith basis for believing that the disclosure of Gilliam's cell phone location was necessary to protect a missing child from being prostituted and subject to serious physical injury.

II. Other Claims

Gilliam's other claims do not require extended discussion. His arrest was supported by probable cause, based both on events occurring at the scene of his arrest and his sex trafficking with respect to Jasmin. There was

no error in the jury charge, and the evidence fully supported the jury's verdict.

## Conclusion

The judgment of the District Court is affirmed.