# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1082

STATE OF LOUISIANA

VERSUS

JEFFREY MALVEAUX, JR.

**********

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 06-250213
HONORABLE PAUL JOSEPH DEMAHY, DISTRICT JUDGE

**********

## VAN H. KYZAR

## JUDGE

**********

Court composed of Phyllis M. Keaty, John E. Conery, and Van H. Kyzar, Judges.

**WRIT GRANTED, JUDGMENTS/RULINGS REVERSED,
MOTION TO SUPPRESS DENIED.**

**M. Bofill Duhe**
**District Attorney**
**W. Claire Howington**
**Iberia Parish Assistant District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR PLAINTIFF/APPLICANT:**
    **State of Louisiana**

**Harold D. Register, III**
**McCorvey Law, LLC**
**P. O. Box 2473**
**Lafayette, LA 70501**
**(337) 291-2431**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
    **Jeffrey Malveaux, Jr.**

**Kyzar, Judge.**

The State of Louisiana has filed the instant application for supervisory writs from the trial court's granting of a motion to suppress evidence, including cell phone GPS location data and statements of Defendant and his co-defendants. For the reasons herein, we grant the writ, make it peremptory, and remand to the trial court for further proceedings consistent herewith.

## FACTS AND PROCEDURAL HISTORY

Defendant, Jeffrey Malveaux, Jr., was charged by a Bill of Information with being an accessory after the fact to attempted second degree murder, in violation of La.R.S. 14:25, La.R.S. 14:27, and La.R.S. 14:30.1. On June 14, 2017, Defendant filed a "Motion to Suppress Evidence as a Result of an Illegal Search and Seizure." The purpose of the motion was to suppress, for use as evidence, certain cell phone GPS location data for the location of a cell phone belonging to a female subject, Ashley Seaux. Said location data was secured without a warrant. The motion further seeks to suppress the inculpatory statements of Defendant as "fruit" of the alleged unconstitutional search, and also the statements of co-defendants as obtained in violation of Defendant's confrontation rights.[1]

At the hearing on the motion to suppress, the State called Deputy Kim Talley of the St. Martin Parish Sheriff's Department to testify. Ms. Talley was a detective with the St. Martinville City Police on May 20, 2016, the date of the crime involved herein. On that date, she participated in the investigation into the shooting of a male victim, Mike Zeno. Deputy Talley testified that Mr. Zeno and a female occupant of the car he was driving arrived at the police station and reported the shooting. Detective Talley attended to the female first, who had been hit with

---

[1] The substance of the purported inculpatory statements made by Defendant and his co-defendants is not made clear by the State's writ application to this court. However, the substance of the statements is not relevant to our analysis of the trial court's ruling.

shattered glass, while other officers assisted Mr. Zeno, who had been shot in the abdominal area. Mr. Zeno told Detective Talley and other officers that he came to a stop behind another car at the intersection of LaSalle and Port Streets in St. Martinville when a male exited from the left rear passenger compartment of the car, walked back toward Mr. Zeno's car armed with a gun, and fired two shots at Mr. Zeno through the car's window. The shooter then returned to the car he was riding in, and it pulled away. Mr. Zeno told the officers that the car involved was a maroon Honda Accord and that he knew the owner of the car to be Ashley Seaux. Deputy Talley stated that she knew Ms. Seaux personally as she is the mother of a child whose father is Deputy Talley's husband's best friend. Deputy Talley called the cell phone of Ms. Seaux, who initially answered, but upon learning whom was calling, Ms. Seaux abruptly stated that she could not talk. Deputy Talley then sent Ms. Seaux a text message inquiring into her whereabouts. Receiving no reply, Deputy Talley texted Ms. Seaux again, telling her that she was not in any trouble and that Deputy Talley just needed to know where she was. Deputy Talley finally received a reply, detailed in her testimony per the following colloquy:

Q. Okay. And what is it that she is telling you in these text messages?

A. She is telling me, "Kim, I'm scared for my life." I responded with, "Please talk to me. Where are you at?" She responds. "At this time I am around people. I will get killed." I didn't understand that statement. So she responds, "No. Help me, please. Please help me."

Detective Troy LeBlanc of the St. Martinville Police Department also testified. He went to the scene of the shooting and was able to locate a video recording of the incident from a gas station adjacent to the corner where it occurred. The recording showed a male exit the maroon Honda from the rear driver's side and proceed to shoot Mr. Zeno. Police were able to identify the maroon Honda as belonging to Ms. Seaux. Detective LeBlanc then went to the home of Ms. Seaux's

2

aunt, Ms. Johnson. According to Detective LeBlanc, Ms. Johnson called Ms. Seaux while in his presence and had a momentary conversation. He then attempted to call Ms. Seaux himself but got no answer. After reviewing the text messages received by Deputy Talley from Ms. Seaux, he and Detective Cody Dodge contacted AT&T, the cell service provider, to attempt to access the GPS location data for Ms. Seaux's phone via an exigent circumstances request for the GPS data as authorized by 18 U.S.C. § 2702(c)(4). None of the investigating detectives applied for a warrant. AT&T provided the information that the cell phone was located in Natchez, Mississippi. Natchez police authorities were contacted for assistance, ultimately leading to several subjects being apprehended, including Defendant, other co-defendants, and Ms. Seaux.

The trial court held hearings on Defendant's motion to suppress on August 24, 2017 and September 5, 2017. The court held that use of information regarding a third party's GPS location obtained from a cell phone service provider violated the third party's Fourth Amendment rights. Pursuant to this ruling, the court suppressed the location data and statements by Defendant and co-defendants obtained thereafter. In its initial ruling at the end of the hearing held on August 24, 2017, the court stated:

BY THE COURT:

First off, with regard to the right of privacy, Mr. Register accurately quoted Section 5 of Article I of the Louisiana Constitution which says, "Any person adversely affected by a search or seizure conducted in violation of this section shall have standing to raise its illegality in the appropriate court."

If someone else's 4th Amendment Rights are violated and it affects Mr. Malveaux, even though his 4th Amendment Rights were not violated, he can assert their 4th Amendment Rights.

Secondly, with regards to exigent circumstances, I am going to take judicial notice of the fact that in the 16th Judicial District Court and the St. Martin Parish -- the St. Martinville Police Department,

3

they can obtain electronic warrants which can be done in a matter of minutes. It takes them longer to talk to AT&T than it does to obtain an electronic search warrant.

With regard to expectation of privacy, there are certain records that the phone company has and there is no expectation of privacy because it is held by a third party. But somebody's physical location, or the physical location of their phone, is not a record maintained by AT&T, or the cell phone provider. They had to take action to find, to locate that cell phone. I am not aware of any particular case regarding that. However, attaching a GPS locator to somebody's vehicle and to track it is a violation of their right to privacy as to where they have traveled. So I would think in the same way, a GPS locator of the telephone violates the same right to privacy. For those reasons, I find that the action of obtaining a GPS location of the cell phone through AT&T was a violation of Miss Seaux's 4th Amendment Rights, which can be asserted by Mr. Malveaux.

After the conclusion of the September 5, 2017 hearing, the trial court ruled:

BY THE COURT:

With regards to the statements of the possible codefendants, those will be suppressed because it violates the defendant's right of confrontation. As the Court had previously ruled, the phone company located the telephone and notif[ied] the Police Department -- they located the phone at the Police Department's request and notifying the Police Department of the phone's location was a violation of the owner's 4th Amendment right to reasonable search and seizure. In fact, the Court finds there was in fact a search without a warrant and the Court, again, took judicial notice that the St. Martinville Police Department and the 16th Judicial District Court has an electronic warrant system. And therefore, there is no exigent circumstance because the time it takes them to get a warrant is probably less than the time it took them to get AT&T to undergo the operation. According to the Louisiana Constitution, the defendant can object to a violation of someone else's 4th Amendment rights, or their state rights against an illegal search and seizure. Therefore, as a result of that information, they were able to arrest the defendant and obtain a statement from him. I find that that would be considered "the fruit of the poisonous tree" and therefore, his statement is suppressed.

The State now seeks review, assigning as a single and general error in brief that the trial court erred in granting the motion to suppress. However, it divides the assignment into three sub-arguments. The State argues the trial court erred by granting Defendant's motion to suppress because Defendant had "no legitimate expectation of privacy in data logs stored by third parties and

4

voluntarily disclosed to law enforcement by those third parties." The State further contends the trial court erred in finding "that the exigent circumstances did not vitiate the warrant requirement." The State notes that police officers reasonably believed that a woman who was potentially involved in the offense was in imminent physical danger. Finally, the State argues that even if the trial court did not err regarding the two points just noted, it erred by suppressing the co-defendants' statements on the basis that police had violated Defendant's confrontation rights.

## OPINION

We review a trial court's ruling on a motion to suppress using the "abuse of discretion" standard. *State v. Williams*, 16-966 (La.App. 3 Cir. 5/24/17), 222 So.3d 969.

> The Louisiana and Federal constitutions prohibit unreasonable searches and seizures. U.S. CONSTITUTION ANN. art. IV; LA. CONST. ANN. art. I, § 5. A search warrant may issue only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized. LA. CONST. ANN. art. I, § 5; LA.CODE CRIM. PROC. ANN. art. 162. Probable cause sufficient to issue a search warrant "exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched." *State v. Johnson*, 408 So.2d 1280, 1283 (La.1982); LA CODE CRIM. PROC. ANN. art. 162. The task for a reviewing court is simply to insure that under the totality of the circumstances the magistrate had a "substantial basis" for concluding probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). Determination of probable cause does not rest on the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action. *State v. Kalie*, 96-2650 (La.9/19/97), 699 So.2d 879, 880. A warrantless search is *per se* unreasonable unless it falls within certain limited, well-delineated exceptions to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Hernandez*, 410 So.2d 1381 (La.1982); *State v. Zito*, 406 So.2d 167 (La.1981). Warrants therefore

5

are generally required to search an individual's home or person, "unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *State v. White*, 399 So.2d 172, 175 (La.1981). The trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. *State v. Vessell*, 450 So.2d 938, 943 (La.1984).

*State v. Lee*, 05-2098, pp. 14-15 (La. 1/16/08), 976 So.2d 109, 122, *cert. denied*, 555 U.S. 824, 129 S.Ct. 143 (2008).

Although the State addressed as the second sub-issue in its argument that the trial court erred in finding the exigent circumstances exception to the search warrant requirement did not apply to the GPS location data of the cell phone, we will address it first here as we find that the relevant facts in the present case support the existence of exigent circumstances.

At the suppression hearing, Deputy Kim Talley testified she was able to identify the vehicle involved in the shooting incident as belonging to Ms. Seaux, who she personally knew. The deputy then called Ms. Seaux's cell phone, as described in the following colloquy:

Q.    Did you ask her if the vehicle was involved in a shooting in the city limits of St Martinville?

A.    No, ma'am.

Q.    Did you ask her if she knew anything about a shooting that occurred involving her vehicle?

A.    No, ma'am.

Q.    Did you ask her if she was in the car within the city limits?

A.    No, ma'am. I didn't have a chance to.

Q.    What did you ask her?

A.    I asked her if she was okay. I said, "Where are you?" This was on the phone. This was through the phone. She said, "Who is this?" I said, "This is Kim." She knows who I work for her [sic] and it is not

6

the first time I have dealt with her. She said, "I can't talk," and she hung up the phone.

Q. Now is that the only conversation that you had with her?

A. That was it.

Q. That was a verbal conversation?

A. Verbal. Yes, ma'am.

Q. Okay. Did you have any kind of conversation with her via text message?

A. Yes, ma'am.

Q. Okay. Can you tell us the nature of the texts?

A. I texted her because she could not speak, so I texted her. I asked her where she was. No answer. I asked her again, "Tell me where you are." No answer. I said, "Ashley, you are not in any trouble. I need to talk to you." She responds with, "Kim, I'm scared for my life. I don't want to die."

Detective Troy LeBlanc testified that because Ms. Seaux was "in fear," officers contacted AT&T to obtain the GPS location of her cell phone. Detective LeBlanc explained the circumstance to AT&T and expressed his belief that Ms. Seaux was in danger, and the phone company agreed to provide the information without a subpoena or a warrant.

In argument, Defendant's counsel implied that Ms. Seaux should have been *Mirandized* before Deputy Talley asked her any questions and that Deputy Talley created the exigent circumstances by initiating contact with Ms. Seaux.[2] As shown by the passages from the trial court hearings cited earlier, the court did not rest its ruling on the police's failure to *Mirandize*. Regardless, we conclude that a *Miranda* warning was not required under the circumstances presented here, as Ms. Seaux was not in custody during the telephonic exchanges with Deputy

---

[2] *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602 (1966).

7

Talley and was not "otherwise deprived of . . . freedom of action in any significant way." *State v. Broussard*, 16-974, p. 10 (La.App. 3 Cir. 6/13/17), 224 So.3d 23, 31.

In determining whether the exigent circumstances exception to the warrant requirement applies here, we note that police officers cannot use exigent circumstances they create themselves to avoid constitutional warrant requirements. *State v. Fournette*, 08-254 (La.App. 4 Cir. 7/2/08), 989 So.2d 199, *writs denied*, 08-1815, 08-1824 (La. 4/17/09), 6 So.3d 789. In this case, however, Deputy Talley's contact with Ms. Seaux did not create the exigent circumstances at issue. Deputy Talley merely received information that the exigent circumstances existed. Exigent circumstances were created by Ms. Seaux's self-proclaimed fear for her own life and pleas for Deputy Talley's help. At that time, Deputy Talley and the other detectives had significant information, including Mr. Zeno's account and corroborating video evidence that an armed man occupying Ms. Seaux's vehicle had just shot another man. These circumstances coupled with Ms. Seaux's plea for help created a situation for any peace officer to reasonably conclude that a person's life may be in grave danger. Thus, there was a clear need to act quickly, even if the circumstances necessitated acting without first securing a search warrant, in order to prevent another violent crime or to find the location of another potential victim. This is precisely the purpose for and rationale behind the exigent circumstances exception to the warrant requirement. Further, it is precisely the purpose behind 18 U.S.C. § 2702(c)(4) of the Stored Communications Act (SCA), authorizing cell phone service providers to disclose, without a warrant, "a record or other information pertaining to a subscriber to or customer of such

service . . . to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." Indeed, in this case, it was apparently AT&T who determined, based on the information provided by the detectives, that a real time emergency potentially involving death or serious physical injury existed. Thus, it provided the "other information," i.e., the cell phone GPS location data, pertaining to the subscriber, Ms. Seaux, as it was authorized to do by law. 18 U.S.C. § 2702(c)(4).

In a case involving a very similar fact situation, the U.S. Court of Appeal for the Second Circuit in *United States v. Gilliam*, 842 F.3d 801 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 2110 (2017), reviewed the denial of a motion to suppress GPS location data information obtained from a cell service provider pursuant to 18 U.S.C. § 2702(c)(4). There, the Maryland State Police were contacted by the foster parents of a minor who reported that the child was missing from home and who provided authorities with the name of the minor's boyfriend as potentially being involved in the disappearance. Social workers advised that they feared the child was being taken to New York by the defendant, who was the same person identified by the foster parents, where he was planning to initiate her into prostitution. Based on an exigent circumstances request, Sprint Corporation provided GPS location data information for the defendant's cell phone. When the minor contacted her birth mother on the same phone two days later, authorities "pinged" the location of the phone in New York and were able to apprehend the minor and the defendant with the assistance of NYPD. In analyzing 18 U.S.C. § 2702(c)(4), the *Gilliam* court found that the disclosure of the information to

9

Maryland and New York authorities without a warrant was authorized by exigent circumstances and upheld the denial of the motion to suppress the evidence.

The initial statutory issue presented by Sprint's disclosure of GPS location information is whether it was "other information" within the meaning of subsection 2702(c)(4). Congress intended the phrase "other information" to cover "information about the customer's use of the service." S. Rep. No. 99-541, at 38 (1986). Several district courts have interpreted the phrase to include the location of a customer's cell phone. *See United States v. Graham*, 846 F.Supp.2d 384, 396 (D. Md. 2012) (subsequent history omitted); *In re Application of the United States for an Order Authorizing the Release of Historical Cell-Site Info.*, 809 F.Supp.2d 113, 125 (E.D.N.Y. 2011); *In re Application of the United States for Prospective Cell Site Location Info. on a Certain Cellular Telephone*, 460 F.Supp.2d 448, 460-61 (S.D.N.Y. 2006). We agree that "other information" includes the location of a subscriber's cell phone.

The second statutory question is whether the circumstances presented to Sprint showed "an emergency involving danger of . . . serious physical injury to any person." We think it obvious that "involving," 18 U.S.C. § 2702(c)(4), includes a realistic threat of such injury, not just a completed injury. That statutory question also arises in connection with the constitutional issue presented by Sprint's disclosure at the request of a law enforcement officer and the use of that information to locate and arrest Gilliam without a warrant. That issue is whether such a disclosure and arrest without a warrant violated the Fourth Amendment.

Both the second statutory issue and the Fourth Amendment issue turn on whether the circumstances known to law enforcement and presented to Sprint were within the category of "exigent circumstances" that permit warrantless searches. *See Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 2487, 189 L.Ed.2d 430 (2014). "The core question is whether the facts . . . would lead a reasonable, experienced officer, to believe that there was an urgent need to . . . take action." *United States v. Klump*, 536 F.3d 113, 117-18 (2d Cir. 2008) (internal citations and quotation marks omitted). "A district court's determination as to whether exigent circumstances existed is fact-specific, and will not be reversed unless clearly erroneous." *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990) (in banc) (citations omitted).

. . . .

Congress has "deemed it reasonable to subordinate any individual privacy interest in cell phone location information to society's more compelling interest in preventing an imminent threat of death or serious bodily injury," and has therefore given service providers the authority to decide whether there existed an "emergency

involving danger of death or serious physical injury to any person." *United States v. Caraballo*, 963 F.Supp.2d 341, 360 (D. Vt. 2013) (citations omitted), *aff'd*, 831 F.3d 95 (2d Cir. 2016). Based on [law enforcement's] affirmation, Sprint had a good faith basis for believing that the disclosure of Gilliam's cell phone location was necessary to protect a missing child from being prostituted and subject to serious physical injury.

*Gilliam*, 842 F.3d at 803-05 (footnotes omitted).

The *Gilliam* court concluded that faced with exigent circumstances based on credible information that the defendant was engaged in prostituting a missing child across state lines, the officer involved acted reasonably in obtaining the defendant's cell phone location information without a warrant. The court rejected the defendant's argument that the limited amount of time that it would have taken to secure a warrant would not have added significantly to any potential harm the victim may have faced. Likewise, we conclude that the detectives here acted reasonably in obtaining Ms. Seaux's cell phone location information without a warrant, and AT&T rightly provided the information given the clear exigencies of the situation. The trial court was clearly wrong in finding otherwise. The trial court's assertion that the electronic warrant capabilities within the jurisdiction would not have added any significant time to the process has no bearing on whether exigent circumstances existed so as to trigger the application of 18 U.S.C. § 2702(c)(4) and AT&T's reliance thereon. *Id.*

In *U.S. v. Takai*, 943 F.Supp.2d 1315 (D. Utah 4/30/13), the U.S. District Court reviewed a motion to suppress involving the application of 18 U.S.C. § 2702(c)(4). As recited by the court, the facts established that on the evening of June 15, 2011, in a fast moving investigation that had been underway since the early morning hours of the same day, "teams of law enforcement officers including gang unit detectives were dispatched to search known hangouts for Defendant,

11

who the officers and detectives believed, based on reliable information from gang unit detectives, was armed and dangerous." *Id.* at 1322. After the teams left to begin their respective stakeouts, one of the officers, Detective Spangenberg, prepared and submitted an emergency application to AT&T for the GPS location "pinging" data from two phones that police believed the defendant was using. The defendant argued that the evidence did not establish exigent circumstances such that a warrant should have been obtained for the location information. That court disagreed.

> The court finds to the contrary. Detective Spangenberg had probable cause to believe that Defendant was the individual who committed the Redwood Road robbery and the violent shooting of the clerk in the face at point blank range. Detective Merino, a gang unit detective familiar with Defendant, his family, and the general gang scene and affiliations in the area, had reviewed video footage of both the California Ave. beer run theft and the subsequent Redwood Road robbery/shooting and had positively identified Defendant as the prime suspect. Detective Spangenberg had independent experience with the gangs with which Defendant was believed to be associated and was also aware that the "beer run robbery" was one of the signature crimes known to be committed by such gangs. Based on the violence of the Redwood Road robbery, combined with his awareness of the "beer run robberies," it was entirely reasonable for Detective Spangenberg to conclude that given the two convenience store incidents that had already occurred, another might be imminently forthcoming. Also, he had been informed by knowledgeable gang unit detectives that Defendant was known to be violent and believed to be currently armed and dangerous. Under these emergency circumstances, Detective Spangenberg's application pursuant to 18 U.S.C. § 2702 was a reasonable way to proceed to obtain the suspect's cellphone GPS pinging data as quickly as possible, hopefully to help officers who were in the process of staking out Defendant's known hangouts.

*Id. at* 1323.

Interestingly, the State in *Takai* also opposed the motion to suppress both on a traditional application of the exigent circumstances exception to the warrant requirement and on the good faith exception to the exclusionary rule, as does the State in the instant case. In finding both to be equally viable, the *Takai* court stated as follows:

12

*a.*  *Exigent Circumstances Exception*

The Government also opposes Defendant's Motion to Suppress based on the well-established "exigent circumstances" exception to warrantless searches. (Govt.'s Resp. Mot Suppr. 6-8 [Dkt. No. 98].) The Tenth Circuit has consistently applied the "exigent circumstances" exception to the warrant requirement "when the circumstances posed a significant risk to the safety of a police officer or a third party." *United States v. Najar*, 451 F.3d 710, 717 (10th Cir. 2006). A two-part test applies: "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." The facts outlined in the paragraphs above show that this test is easily met with Detective Spangenberg's decision to use a Section 2702 application to obtain cellphone GPS pinging data on Defendant quickly from the service provider without a warrant.

*b.*  *Good Faith Exception*

This issue ultimately pivots on the application of the good faith exception described in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See United States v. Barajas*, 710 F.3d 1102, 1109 (10th Cir. 2013) (holding that the good faith exception applied where officers relied in good faith on a wiretapping warrant that included GPS pinging data even though the applications for the warrant did not specifically request such cellphone GPS pinging data). That is, even if the court were required to find that Detective Spangenberg acquired the [Cell Site Location Information] in violation of Defendant's Fourth Amendment rights, the *Leon* good faith exception, as further applied by *Illinois v. Krull*, 480 U.S. 340, 349, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), would remove suppression as an available remedy. Under *Leon*, evidence obtained by law enforcement officers in objective good faith reliance on a facially valid warrant is admissible even if the search warrant is ultimately deemed invalid. 468 U.S. at 926, 104 S.Ct. 3405. And under *Krull*, the exception applies if officers obtain evidence in "objectively reasonable reliance on a statute." 480 U.S. at 349, 107 S.Ct. 1160. In extending *Leon* this way, the Supreme Court in *Krull* reasoned that "[t]here is no basis for applying the exclusionary rule to exclude evidence obtained when a law enforcement officer acts in objectively reasonable reliance upon a statute, regardless of whether the statute may be characterized as 'substantive' or 'procedural.' " *Id.* at 356 n. 12, 107 S.Ct. 1160; *See also United States v. Clarkson*, 551 F.3d 1196, 1204 (10th Cir. 2009) (noting that *Krull* extended the *Leon* good-faith exception to officers' good faith reliance on a statute's regulatory scheme permitting warrantless searches, even where the regulatory scheme was later declared unconstitutional).

Here, as in *Graham*, Defendant has not challenged the constitutionality of the SCA. 846 F.Supp.2d at 405. Nothing would

13

suggest that either the SCA or, more specifically, Section 2702(c)(4), were enacted by a legislature that had "wholly abandoned its responsibility to enact constitutional laws." *Krull*, 480 U.S. at 356, 107 S.Ct. 1160. Even if Defendant were arguing that the SCA were unconstitutional as applied, which he does not appear to be doing, "other courts have concluded that suppression is inappropriate" where officers have acted in good faith reliance on its provisions. *Graham*, 846 F.Supp.2d at 406 (citing cases). This court therefore agrees with *Graham* that it is "objectively reasonable for law enforcement to rely on the Stored Communications Act" in obtaining CSLI, as Detective Spangenberg did in reliance on the emergency provision of Section 2702 under these circumstances. *Id.*

*Id.* at 1323-24.

In *State v. Isaac*, 17-87 (La.App. 5 Cir. 10/25/17), 229 So.3d 1030, law enforcement officers in Jefferson Parish were investigating three armed robberies, involving five victims, committed at various businesses over the span of less than one month. The perpetrators of the crimes were armed with firearms, and as one of the officers testified, it was only a matter of time before a gun accidentally discharged or a victim was shot because he was uncooperative. Video surveillance showed the violent nature of the robberies, depicting armed gunmen entering the businesses, forcing the victims to the ground, face down, with guns to the back of their heads. The police believed the defendant in the case was involved in the crimes and had information he might become violent towards police and flee the area before he could be apprehended. Armed with this information and provided with the defendant's cell phone number, investigators made an exigent circumstances request to Sprint/Nextel, seeking defendant's subscriber information, cell site information, and precise GPS location of the cell phone. The defendant moved to suppress the cell phone location information. In finding that the trial court properly denied the motion to suppress, the court stated as follows:

The issue in this case turns on whether the circumstances known to law enforcement and presented to Sprint/Nextel were within the category of "exigent circumstances" that permit warrantless searches. "The core question is whether the facts . . . would lead a

14

reasonable, experienced officer, to believe that there was an urgent need to . . . take action." *United States v. Klump*, 536 F.3d 113, 117-18 (2d Cir. 2008), *cert. denied*, 555 U.S. 1061, 129 S.Ct. 664, 172 L.Ed.2d 638 (2008) (internal citations and quotation marks omitted). "A district court's determination as to whether exigent circumstances existed is fact-specific, and will not be reversed unless clearly erroneous." *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990) *(en banc)*, *cert. denied*, 498 U.S. 1119, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991) (citations omitted).

. . . .

Because of the frequency and volatile nature of the violent crimes that had been committed, exigent circumstances justified GPS tracking of Defendant's phone to determine his location in order to effectuate his arrest, pursuant to a validly issued arrest warrant, in order to protect the public against additional crimes. Additionally, Sprint/Nextel's disclosure of the GPS tracking information was authorized by the SCA and the use of the real-time GPS location of Defendant's cell phone was no more expansive than necessary to address the exigency that existed.

*Id.* at 1041

Additionally, the *Isaac* court held that the "good faith" exception to the application of the exclusionary rule applied as well.

Further, in addition to exigent circumstances, the police had a good faith, reasonable belief that applicable law authorized the obtaining of Defendant's cell phone records in the circumstances of this case. In *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), the Supreme Court concluded that its holding in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), "that the Fourth Amendment exclusionary rule does not apply to evidence obtained by police officers who acted in objectively reasonable reliance upon a search warrant issued by a neutral magistrate, but where the warrant was ultimately found to be unsupported by probable cause," should be extended to instances in which "officers act in objectively reasonable reliance upon a statute authorizing warrantless administrative searches, but where the statute is ultimately found to violate the Fourth Amendment." *Krull*, 480 U.S. at 342, 107 S.Ct. 1160. Thus, even though the SCA has not been ruled unconstitutional and Defendant does not challenge its constitutionality, suppression in the instant matter is not a viable remedy. *See United States v. Takai*, *supra* (ruling that based upon the emergency provisions of the SCA, "even if the court were required to find that [law enforcement] acquired the CSLI [cell site location information] in violation of the defendant's Fourth Amendment rights, the *Leon* good faith exception, as further applied by *Illinois v. Krull*,

480 U.S. 340, 349, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), would remove suppression as an available remedy").

Accordingly, we find the trial court properly denied Defendant's motion to suppress based on exigent circumstances, the SCA, and the officers' reasonable good faith reliance on applicable law.

*Id.* at 1041-42 (footnote omitted).

The case at hand presents an even clearer showing of exigent circumstances. The officers involved, Deputy Talley as well as Detectives LeBlanc and Dodge, had more than sufficient evidence on which to justify a reasonable belief that Ms. Seaux's life may have been in jeopardy or that the perpetration of another violent crime was imminent. Further, the officers were acting on a good faith reliance of the Stored Communications Act provisions of 18 U.S.C. § 2702, and thus, the trial court abused its discretion in granting the motion to suppress in this case. Having concluded that due to the exigent circumstances involved the police did not have to secure a warrant to request Ms. Seaux's GPS location from AT&T, we further find that the trial court erred in ruling that the statements of the co-defendants at issue were "fruit of the poisonous tree."

The trial court also ruled that as Defendant was not present when the co-defendants made their statements, his right to confrontation was violated. The State notes that the right to confrontation does not attach until trial. The supreme court has explained: "[T]he United States Supreme Court has specifically rejected confrontation clause claims in pre-trial proceedings. Similarly, although La. Const. art. I, § 13 recognizes the right of a defendant to confront his accuser, the confrontation that this article secures is confrontation at the trial, not prior thereto." *State v. Harris*, 08-2117, p. 1 (La. 12/19/08), 998 So.2d 55, 56 (internal citations omitted). Thus, the State is correct, and the trial court erred in excluding the co-defendants' statements on this ground.

16

## DISPOSITION

For the reasons set forth herein, we grant the writ and make it peremptory. Therefore, the trial court's rulings at the hearings held on August 24 and September 5, 2017, are vacated, and the case is remanded for further proceedings in accordance with this ruling.

**WRIT GRANTED, JUDGMENTS/RULINGS REVERSED, MOTION TO SUPPRESS DENIED.**